FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2008 APR 10  PM 4:00

LORETTA G. WHYTE
CLERK



**FELONY**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT
MAIL AND WIRE FRAUD, MAIL FRAUD, WIRE FRAUD, ENGAGING
IN THE  BUSINESS OF INSURANCE AFTER HAVING BEEN CONVICTED
OF A CRIME INVOLVING DISHONESTY AND A BREACH OF TRUST,
CONSPIRACY TO COMMIT MONEY LAUNDERING, AND MONEY LAUNDERING**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.  07-384 |
| v. | * | SECTION:  "J" (1) |
| GWENDOLYN JOSEPH MOYO | * | VIOLATIONS: 18 USC § 371 |
| a/k/a Gwen Moyo | | 18 USC § 1341 |
| DERRICK D.T. SHEPHERD | * | 18 USC § 1343 |
| AA COMMUNICATIONS, INC. | | 18 USC § 2 |
| CAPITAL MANAGEMENT AND | * | 18 USC § 1956(h) |
| ASSET GROUP | | 18 USC § 1957 |
| JAMES ZOUCHA | * | |

\*     \*     \*

The Grand Jury charges that:

### COUNT 1

**A.     AT ALL TIMES MATERIAL HEREIN:**

1.     **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo** (hereafter referred to

as **"MOYO"**), was an individual residing and doing business in Louisiana.  **MOYO** was

neither licensed nor authorized to transact insurance in Louisiana nor any other state.

Fee_____
Process_____
X  Dktd_____
CtRmDep_____
Doc. No._____

**MOYO**, at times, held herself out as a "local agent," "risk manager," "underwriter," and "attorney-in-fact" for unlicensed, unauthorized insurers.

2.     **AA COMMUNICATIONS, INC.** (hereafter "**AA COMMUNICATIONS**") was a corporation incorporated in Nevada, with its principal place of business in New Orleans, Louisiana. **AA COMMUNICATIONS** was neither licensed nor authorized to transact insurance in Louisiana nor any other state, but did so under the direction of **MOYO**, who was variously described as **AA COMMUNICATIONS'** "risk manager," "attorney-in-fact," and "underwriter." In its 2006 corporate income tax returns, filed on or about July 13, 2006, **AA COMMUNICATIONS** described its business activity as "surety - re-insurance."

3.     **DERRICK D.T. SHEPHERD** (hereafter "**SHEPHERD**") was an attorney and Louisiana State Senator. **SHEPHERD** deposited construction bond premiums in his accounts for **MOYO** and **AA COMMUNICATIONS** upon a referral from Public Official "A" after **MOYO** and **AA COMMUNICATIONS** were ordered to cease and desist from engaging in the business of insurance and their bank accounts had been seized by state regulators. **SHEPHERD** returned a portion of the construction bond premiums to **MOYO** and issued checks to third parties at her direction.

4.     Public Official "A" was a public official and political rival of **SHEPHERD's**. Public Official "A" referred **MOYO** and **AA COMMUNICATIONS** to **SHEPHERD**. Public Official "A" is associated with "ABC Group" and "XYZ Services."

5.     Public Official "B" was a family member of Public Official "A." Public Official "B" also received funds from **MOYO** and **AA COMMUNICATIONS** through entities Public Official "B" controlled including "XYZ Services."

2

6. **CAPITAL MANAGEMENT AND ASSET GROUP** (hereafter referred to as "**CMAG**") was a corporation incorporated in Nevada, with its principal place of business in New Orleans, Louisiana and offices in Beverly Hills, California; Chicago, Illinois; New York, New York; Miami, Florida; and London, UK. **CMAG** was neither licensed nor authorized to transact insurance in Louisiana nor any other state but did so under the direction of **MOYO**. **CMAG** promoted itself as "an outgrowth firm of a longstanding insurance underwriter" involved in "risk management and commercial insurance."

7. **JAMES ZOUCHA** (hereafter "**ZOUCHA**") was an individual residing in California and doing business in California, Louisiana, and elsewhere. **ZOUCHA** was nominally the president of **AA COMMUNICATIONS**, but acted under the direction of **MOYO**. **ZOUCHA** was neither licensed nor authorized to transact insurance in California, Louisiana, nor any other state.

8. First Nations Insurance Group (hereafter referred to as "First Nations") is an alien insurer purportedly doing business in Toronto, Canada. It is neither licensed nor authorized to transact insurance in any state.

9. United Assurance Company Limited (hereafter referred to as "UACL") is an alien insurer purportedly doing business in Monserrat; Grenada, West Indies; and Los Angeles, California. It is neither licensed nor authorized to transact insurance in any state. UACL described itself as "underwriting experts" "specializing in international bondings" and that "Hard to place risks are our specialty."

10.     In November 1989, **MOYO** was convicted in the United States District Court for the District of Arizona of the following felony charges involving dishonesty or a breach of trust: Conspiracy to Defraud the United States, False Contractor Bonds, False Statements, Mail Fraud, Wire Fraud, and Aiding and Abetting. In addition to a sentence of imprisonment, **MOYO** was ordered to pay a fine of $250,000, and restitution in the amount of approximately $1.2 million dollars. Among other things, **MOYO** was convicted of selling fraudulent construction payment and performance bonds.

11.     On March 18, 1991, **MOYO** was convicted in the United States District Court for the District of Arizona of the following felony charges involving dishonesty or a breach of trust:   three counts of Using a False Social Security Number, and was sentenced to prison and ordered to pay $121,495 in restitution.

12.     Title 18, United States Code, Section 1033(e)(1)(A) makes it a crime for:

> "Any individual who has been convicted of any criminal felony
> involving dishonesty or a breach of trust ... [to] ... willfully engage[s]
> in the business of insurance whose activities affect interstate
> commerce or participates in such business..."

The law defines the term "business of insurance" as "**(A)** the writing of insurance, or **(B)** the reinsuring of risks, by an insurer, including all acts necessary or incidental to such writing or reinsuring and the activities of persons who act as, or are, officers, directors, agents, or employees of insurers or who are other persons authorized to act on behalf of such persons;"

4

The law also provides that the term "insurer" means "any entity the business activity of which is the writing of insurance or the reinsuring of risks, and includes any person who acts as, or is, an officer, director, agent, or employee of that business;"

13.    Under Louisiana law, insurance is defined by statute as including construction payment and performance bonds as follows:

> ...
> Fidelity and Surety. Becoming surety or guarantor for any person, copartnership, or corporation in any position or place of trust or as custodian of money or property, public or private; or becoming a surety or guarantor for the performance of any person, copartnership, or corporation of any lawful obligation, undertaking, agreement, or contract of any kind.
> ...

La. Rev. Stat. 22:6

14.    Under Louisiana law, an insurer must be authorized to transact insurance business within the state:

> An insurer shall not engage in the transaction of insurance unless authorized by a certificate of authority or otherwise is qualified pursuant to the laws of this state, or exempted by this Part or otherwise exempted by the insurance laws of this state.
> ...

La. Rev. Stat. 22:1249.1

15.    Further, under Louisiana law, those who are not authorized to transact insurance are prohibited from doing so:

> ...
> A person shall not engage in a transaction of insurance nor shall in this state, directly or indirectly, act as agent for, or otherwise represent or aid on behalf of another, an unauthorized insurer in the solicitation, negotiation, procurement, or effectuation of

insurance, or renewals thereof, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, or fixing of rates, or investigation or adjustment of claims or losses, or collection or forwarding of premiums, or in any other manner represent or assist the insurer in the transaction of insurance.

...

La. Rev. Stat. 22:1249.1

16.   The transaction of insurance under Louisiana law is also broadly defined

by statute:

A.   Any of the following acts in this state, effected by mail or otherwise, by an unauthorized insurer or by any person acting with actual or apparent authority of the insurer, on behalf of the insurer, is deemed to constitute the transaction of an insurance business in or from this state:

(1) The making of or proposing to make, as an insurer, an insurance contract.

(2) The solicitation, taking or receiving of any application for insurance contract.

(3) The receiving or collection of any premiums, commissions, membership fees, assessment, dues, or other considerations for any insurance contract or any part thereof.

(4) The issuance or delivery of contracts of insurance to residents of this state or to corporations or persons authorized to do business in this state.

(5) The transaction of any matter subsequent to the execution of such a contract and arising out of it.

(6) The doing or proposing to do any insurance business in substance equivalent to any of the foregoing in a manner designed to evade the provisions of the insurance laws of this state.

(7) The solicitation, negotiation, procurement, or effectuation of insurance or renewals thereof.

(8) The transaction of any kind of insurance business specifically recognized as transacting business within the meaning of the statutes relating to insurance.

(9) The dissemination of information as to coverage or rates, or forwarding application(s), or delivery of policies or contracts, or inspection of risks, the fixing of rates or investigation or adjustment of claims or losses or the transaction of matters subsequent to effectuation of the contract and arising out of it, or any other manner of representing or assisting a person or insurer in the transaction of risks with respect to properties, risks, or exposures located or to be performed in this state.

(10) The making or proposing to make, as guarantor or surety, any contract of guaranty or suretyship as a vocation and not merely incidental to any other legitimate business or activity of the guarantor or surety.

(11) The offering of insurance or the transacting of insurance business, or the offering of an agreement or contract which purports to alter, amend, or void coverage of an insurance contract.

...

La. Rev. Stat. 22:1249.1

## B.   THE SCHEME:

Between a time unknown, but before 2006, through the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo, AA COMMUNICATIONS, INC. , DERRICK D.T. SHEPHERD, CAPITAL MANAGEMENT AND ASSET GROUP, JAMES ZOUCHA**, and others known and unknown to the Grand Jury did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and obtain money by means of false pretenses, promises and representations by fraudulently selling

construction payment, performance, and bid bonds purportedly insured by First Nations

Insurance Group, United Assurance Company, Ltd., and other unlicensed,

unauthorized individuals and entities in the following respects:

1.   **MOYO** failed to reveal that she was barred from engaging in the business

of insurance due to her prior convictions for crimes involving dishonesty

and a breach of trust;

2.   **MOYO** failed to reveal that she owed in excess of $1.2 million in

restitution relative to her 1989 and 1990 convictions.

3.   **AA COMMUNICATIONS** functioned as **MOYO's** alter ego and shielded

**MOYO's** income from seizure by creditors and other third parties;

4.   **MOYO, AA COMMUNICATIONS, CMAG,** and **ZOUCHA** failed to reveal

that First Nations and UACL were not authorized to issue construction

bonds in the states where **MOYO** marketed them;

5.   **MOYO, AA COMMUNICATIONS, CMAG,** and **ZOUCHA** failed to reveal

that First Nations and UACL contested **MOYO's** authorization to act on

their behalf and bind coverage for construction bonds;

6.   **MOYO, AA COMMUNICATIONS, CMAG,** and **ZOUCHA** failed to reveal

that First Nations and UACL had previously failed to perform on

construction bonds which had been written;

7.    **MOYO, AA COMMUNICATIONS, CMAG**, and **ZOUCHA** failed to reveal

that they did not render insurance premiums to the purported insurers,

First Nations and UACL.

8.    **MOYO, AA COMMUNICATIONS, CMAG**, and **ZOUCHA** failed to reveal

that they were not authorized to engage in or transact insurance in

Louisiana or elsewhere.

9.    **MOYO, AA COMMUNICATIONS** and **CMAG** failed to reveal that they

employed certain nominees as "strawmen" to act as representatives or

"attorneys-in-fact" for First Nations and UACL.  These nominees/

strawmen were, in fact, untrained Chinese nationals who were low-level

subordinates of **MOYO**, on student visas, who acted solely at the direction

of **MOYO** and as her alter egos.

10.   **MOYO, AA COMMUNICATIONS, CMAG, ZOUCHA,** and **SHEPHERD**

failed to reveal that on November 17, 2006, **MOYO, AA**

**COMMUNICATIONS, CMAG, ZOUCHA,** and UACL and certain of their

officers and employees were ordered by the 19th Judicial District Court,

Parish of East Baton Rouge, State of Louisiana, to cease and desist from

engaging in the business of insurance.  Specifically, it was ordered by the

Court that **MOYO, AA COMMUNICATIONS, UACL, ZOUCHA,** and others:

...

be and hereby are required to cease and desist from all insurance activities, including, but not limited to, the sale, solicitation, negotiation, procurement, placing of insurance, from payment or receipt, directly or indirectly, of any commission, or other valuable consideration for the sale, solicitation, or negotiation of insurance, or to directly or indirectly represent himself or itself to be an insurance producer, or to solicit, negotiate or effect any contract of insurance or to attempt to effect any contract of insurance.

IT IS FURTHER ORDERED that defendants, their shareholders, officers, directors, agents, accountants, attorneys, servants, employees, insurance producers, actuaries and any other partnership, company or entity controlled by same and/or other persons acting for or on behalf of defendants, or subject to their control, and all other persons or entities who have access to, control or possession of the property, assets, and affairs of defendants, be and hereby are enjoined, as follows:

a)   from disposing of or encumbering any of the property or assets of defendants;

b)   from disposing of any records or other documents belonging to defendants or relating to the business and affairs of the defendants;

c)   from the transaction of any insurance business by, for, or on behalf of defendants, including, but not limited to:

    i)   the writing, issuance or renewal of any certificate of coverage, insurance policy, binder, or endorsement to an existing policy or certificate of coverage;

    ii)   the acceptance of any premium or other consideration for the sale, solicitation, negotiation, of insurance or for effecting a contract of insurance.

11.   **MOYO, AA COMMUNICATIONS, CMAG**, and **ZOUCHA** continued to engage in the business of insurance, aided and abetted by **SHEPHERD**, following the cease and desist order by laundering criminal proceeds and facilitating further insurance business through **SHEPHERD's** law firm's bank accounts.

12.   **MOYO** and **AA COMMUNICATIONS** laundered additional criminal proceeds through other associates, including Public Official "B."

13.   **SHEPHERD** created false bills and time records to conceal the money laundering scheme.

**C.    THE CONSPIRACY:**

Beginning at time unknown, but before 2006, and continuing through the date of this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo, AA COMMUNICATIONS, INC., DERRICK D.T. SHEPHERD, CAPITAL MANAGEMENT AND ASSET GROUP, JAMES ZOUCHA**, and others, did knowingly and intentionally combine, conspire, confederate and agree with each other to:  a)  knowingly and willfully cause mail matter to be delivered by the United States Postal Service and interstate commercial carriers in violation of Title 18, United States Code, Section 1341; and b) knowingly and willfully cause to be transmitted by means of wire in interstate and foreign commerce, writings for the purpose of executing the scheme set forth above in violation of Title 18, United States Code, Section 1343.

**D.    OVERT ACTS:**

In furtherance of the conspiracy and to accomplish its purposes, the defendants and others committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

<u>**OVERT ACTS 1 THROUGH 61**</u>

**Sun-Tech Plumbing ("Sun-Tech")**

1.    On or about October 30, 2006, **MOYO** caused Sun-Tech to mail via Federal Express two checks in the amounts of $10,000 and $24,500 as bond premiums for the Jenny Tower Project.

2.    On or about November 11, 2006, **AA COMMUNICATIONS** issued a payment bond to Sun-Tech in the amount of $1,150,000 for the Jenny Tower Project with First Nations as the purported surety.

3.    On or about November 17, 2006, "Gwen Moyo, 261 Oakmont Drive, New Orleans, LA," sent bond documents via Federal Express to "Craig Greene, 4822 SW 159 Avenue, Hollywood, FL."

4.    On or about November 22, 2006, "Gwen Mayo (sic), 261 Oakmont Drive, New Orleans, LA" sent a Sun-Tech check in the amount of $24,500, payable to **AA COMMUNICATIONS,** as a bond premium for the Jenny Tower Project via Federal Express to "AXA Advisors LLC, 1970 (sic) Avenue of the Americas, New York City, NY."

5.      On or about November 10, 2006, **MOYO** caused Sun-Tech to mail via
        Federal Express three checks in the amounts of $5,970.51, $21,420.60,
        and $26,608.89 as bond premiums for the East, West, North, and South
        Building Arte City Projects.  The checks were made payable to **AA
        COMMUNICATIONS** and were sent from "Craig Greezle (sic), ERM
        Building Corp., 12555 Orange Dr Ste 251, Davie, FL," to "Gwen Moyo, AA
        Communications, 261 Oakmont Dr, New Orleans, LA."

6.      On or about December 12, 2006, **AA COMMUNICATIONS** issued
        payment and performance bonds to Sun-Tech in the amount of $714,020
        each, for the Arte City North Building with First Nations as the purported
        surety.

7.      On or about December 12, 2006, **AA COMMUNICATIONS** issued
        payment and performance bonds to Sun-Tech in the amount of $199,017
        each, for the East and West Park Villas owned by the Arte Park LLC with
        First Nations as the purported surety.

8.      On or about December 12, 2006, "Gwen Moyo, 261 Oakmont Drive, New
        Orleans, LA," sent bond documents via Federal Express to "Craig Greene,
        4822 SW 159 Avenue, Hollywood, FL."

9.      On or about December 14, 2006, **AA COMMUNICATIONS** issued
        payment and performance bonds to Sun-Tech in the amount of $886,963
        each, for the Arte City South Building with First Nations as the purported
        surety.

13

10.    On or about December 15, 2006, "Gwen Moyo, 261 Oakmont Drive, New
Orleans, LA," sent bond documents via Federal Express to "Craig Greene,
4822 SW 159 Avenue, Hollywood, FL."

11.    On or about April 23, 2007, "Gwen, 261 Oakmont Drive, New Orleans,
LA," sent a mailing to "Craig Greene, 4822 SW 159 Avenue, Hollywood,
FL."

12.    On or about July 25, 2007, **MOYO** caused Sun-Tech to mail via U.S. mail
or interstate commercial carrier a check in the amount of $37,800 as a
bond premium for the Luxuria project.

13.    On or about July 25, 2007, "AA Communications, Inc., 261 Oakmont
Drive, New Orleans, LA," sent via Federal Express, a Sun-Tech check
payable to **AA COMMUNICATIONS** in the amount of $37,800 to "Ursula
Gusman, Wells Fargo Bank, 530 S.W. Vegas Blvd, Las Vegas, NV."

14.    On or about August 31, 2007, **ZOUCHA** issued a performance bond and a
labor and materials payment bond to Sun-Tech in the amount of
$1,890,000 each, for the Luxuria Project with UACL as the purported
surety and mailed it to a representative of Sun-Tech via U.S. mail or
interstate commercial carrier.

15.    On October 10, 2007, **MOYO** responded via e-mail to a demand for return
of the bond premium relative to the Luxuria bond for Sun-Tech by
responding, "Perhaps your legal is the best solution for you to consider."

14

**Old St. Paul Missionary Baptist Church ("Old St. Paul")**

16.     On or about March 15, 2006, **MOYO** caused to be wired a letter to Keith
        Collins, Bank of Bartlett, Cordova, Tennessee, stating that she was "the
        underwriter for First Nation Insurance Company" and that the contractor
        for the construction of the Old St. Paul Missionary Baptist Church had
        been approved for a bond in the amount of $2,690,659.  **MOYO** further
        directed the bond premium of $121,079.65 be wired to Hibernia Bank,
        New Orleans, Louisiana, Account #xxxxx1910.

17.     On or about March 17, 2006, **MOYO** caused the Bank of Bartlett,
        Cordova, Tennessee to wire $121,079.65 to account number xxxxx1910
        held by **AA COMMUNICATIONS** with Hibernia National Bank, New
        Orleans, Louisiana.

18.     On or about March 21, 2006, **MOYO** represented herself as First Nations'
        "lawful attorney in fact" authorized to issue surety bonds on its behalf up
        to $100,000,000.

19.     On or about January 10, 2007, **MOYO** traveled to West Memphis,
        Arkansas to meet with the Pastor and Board Members of Old St. Paul to
        discuss the construction project and the church's demand on the
        construction bond.

**Great Southern Dredging, Inc. ("GSDI")**

20.     On or about May 18, 2006, in Sacramento, California, **ZOUCHA** entered into an agreement to settle a claim on a construction bond arranged by **AA COMMUNICATIONS** and **MOYO**, in which **ZOUCHA** agreed to pay $260,946 within thirty (30) days, and an additional $123,281 within sixty (60) days with additional sums to be paid from the proceeds of a bankruptcy case. **ZOUCHA** failed to pay any of the settlement as agreed and, on or about October 10, 2006, **ZOUCHA** was cast in judgment in the amount of $384,227 plus interest and attorneys fees along with an additional sum from the bankruptcy case.

21.     On or about August 3, 2006, **ZOUCHA** executed a bid bond in favor of GSDI on behalf of UACL as "Attorney-in-Fact" in the amount of $350,000.

22.     On or about August 17, 2006, **MOYO** sent Tim Kirk, d/b/a American Surety, Cypress, Texas, mailing and wire instructions for the GSDI bond.

23.     On or about August 28, 2006, Tim Kirk, d/b/a American Surety, Cypress, Texas, faxed GSDI mailing and wiring instructions he received from **MOYO**.

24.     On or about August 28, 2006, **MOYO** caused GSDI to mail a cashier's check in the amount of $129,680 via Federal Express, payable to **AA COMMUNICATIONS**, re: "GREAT SOUTHERN DREDGING. down

16

payment for bond. Pelican Park," which was deposited into **AA COMMUNICATIONS'** Capital One account number xxxxxx2303.

25. On or about August 30, 2006, GSDI initiated an intra-fund transfer in the amount of $191,875 to **AA COMMUNICATIONS'** Capital One account number xxxxx1910.

26. On or about August 30, 2006, **MOYO** caused **ZOUCHA**, on behalf of UACL, to send, via Federal Express to GSDI, payment and performance bonds in the amount of $6,630,000 each, relative to the Pelican Park Expansion project.   The bond was rejected by the owner for failure to comply with state law by letter dated September 13, 2006.

27. Following the rejection of the UACL bond, GSDI made demand upon **MOYO, AA COMMUNICATIONS,** and UACL in a letter dated September 21, 2006, to refund the bond premium.  **MOYO** refused in an October 8, 2006 e-mail wired to GSDI and Tim Kirk, d/b/a American Surety, Cypress, Texas, stating, in pertinent part:  "I am sending everything to our attorneys;  I do not wish to discuss this any longer.  Please stop showing up at every location you've sent us a fed-ex, this is now a problem and I insist that you STOP!"

**Derrick Shepherd**

28.   On or about December 5, 2006, **SHEPHERD** entered his time spent

working in connection with "Gwen Moyo AA Com" as "3, 6, 11" for a total

of 20 hours.

29.   On or about the dates below, **SHEPHERD** caused the following checks

related to bond premiums that were made payable to **AA**

**COMMUNICATIONS**, to be deposited into his Shepherd and Associates,

LLC Trust Account at Dryades Savings Bank, account number xxxxx7016:

|    | DATE DEPOSITED | DATE OF CHECK | PAYOR/CONTRACTOR | AMOUNT |
|----|---------------|--------------|------------------|--------|
| a. | 12/13/2006 | 12/15/2006 | VDI Drywall, Inc. | $40,800.00 |
| b. | 12/13/2006 | 12/15/2006 | Sun-Tech Plumbing Contractors | $21,420.60 |
| c. | 12/13/2006 | 11/30/2006 | MPC Plumbing Contractors, Corp. | $27,440.00 |
| d. | 12/19/2006 | 12/15/2006 | Sun-Tech Plumbing Contractors | $26,608.89 |
| e. | 12/19/2006 | 12/11/2006 | Pershing/AXA Advisors, LLC | $24,416.72 |
|    |            |            | **Total** | $140,686.21 |

30.   On or about the dates below, **SHEPHERD**, acting at the direction of

**MOYO** and **AA COMMUNICATIONS**, caused the following checks to be

written:

|    | DATE OF CHECK | CHECK NUMBER | PAYEE | AMOUNT |
|----|--------------|-------------|-------|--------|
| a. | 12/18/2006 | 1570 | Gwendolyn Joseph | $45,000.00 |
| b. | 12/18/2006 | 1571 | Gwendolyn Joseph | $5,000.00 |
| c. | 12/18/2006 | 1573 | James Zoucha | $5,000.00 |

| | DATE OF CHECK | CHECK NUMBER | PAYEE | AMOUNT |
|---|---|---|---|---|
| d. | 12/18/2006 | 1574 | Ping Yu (sic) | $5,000.00 |
| e. | 12/18/2006 | 1575 | Gwendolyn Joseph | $5,000.00 |
| f. | 12/22/2006 | 1577 | James Taylor | $10,000.00 |
| | | | Total | $75,000.00 |

31.    On or about December 21, 2006, Yu Peng cashed Shepherd and Associates check #1574 at the direction of **MOYO** and immediately turned over the proceeds to **MOYO**.

32.    On or about December 18, 2006, **SHEPHERD** created a false invoice to **MOYO** and **AA COMMUNICATIONS** stating "Funds received $50,686.21 minus Legal Fee Payment $ -10,000. and Total Amount Made Payable to Clients $40,686.21."

33.    On or about December 21, 2006, **SHEPHERD** created a false invoice to **MOYO** and **AA COMMUNICATIONS** stating "Hours Performed 10.75, Rate $250, Total Owed $2,700."

34.    On or about December 21, 2006, **SHEPHERD** signed a letter to **MOYO** and **AA COMMUNICATIONS** purporting to terminate the relationship and enclosing a "final invoice of $2,700 of which we have discussed."

35.    On or about December 22, 2006, **SHEPHERD** caused to be mailed via Federal Express from Marrero, LA, a check in the amount of $10,000 to James Taylor, Lancaster, CA.

19

**Bleyer Insurance Agency, Inc. ("Bleyer")**

36. On or about July 14, 2006, **MOYO** caused Tom Bleyer, 802 N. Court Street, Marion, IL, to mail a check, via DHL in the amount of $750, to "AA Communications, 10043 Jefferson Highway, Baton Rouge, LA, Attention: Gwen Mayo (sic), for Fricke Management, Inc. Bid Bond."

37. In or about July, 2006, **AA COMMUNICATIONS** mailed a bid bond to Thomas Bleyer, 802 North Court Street, Marion, Illinois  62959, via U.S. mail or interstate commercial carrier relative to the Fricke Management bid bond.

38. On or about August 9, 2006, **AA COMMUNICATIONS** e-mailed Tim Kirk, d/b/a American Surety, Cypress, Texas, an invoice dated August 9, 2006, in the amount of $795,709.46, for the Fricke Management Project with instructions to wire funds to **AA COMMUNICATIONS'** Capital One account number xxxxx1910, in New Orleans, Louisiana.

39. On or about October 5, 2006, **MOYO** personally met with Thomas Bleyer in New Orleans, Louisiana.  Bleyer presented **MOYO** with a cashier's check dated October 4, 2006, payable to **AA COMMUNICATIONS, INC.** for $795,709.46 for payment and performance bonds for Fricke Management, Inc.

40. On or about December 15, 2006, **MOYO** sent a fax to Bleyer including an invoice for Berry Concrete Construction, in the amount of $3,660.

41.     On or about December 15, 2006, **AA COMMUNICATIONS** issued
        payment and performance bonds to Berry Concrete Construction, Inc., in
        the amount of $122,000 each, for the White Walnut Farms, LLC Project
        with First Nations as the purported surety.

42.     On or about December 15, 2006, "Gwen Moyo, AA Communications, 261
        Oakmont Dr, New Orleans, LA," sent bond documents via Federal
        Express to "Tom Bleyer, Bleyer Insurance Agency, Inc., 802 N. Court St,
        Marion, IL."

43.     On or about December 20, 2006, **MOYO** caused "Thomas Bleyer, 802 N.
        Court St., Marion, IL," to send via DHL, check number 3185, dated
        December 14, 2006, to "AA Communications, Inc., 8000 GSRI Avenue,
        Building 3000, Room 128, Baton Rouge, LA, Attention:  Gwen Moyo," for
        payment of $3,660 for payment and performance bonds for Berry
        Concrete Construction, Inc.

**Strategic Vision/C.D. Champion Hotel**

44.     On or about January 2, 2007, **CMAG** sent an invoice to Strategic Vision
        advising the bond premium for their project would be $142,252.04 with
        payment instructions to **CMAG**, 261 Oakmont Drive, New Orleans,
        Louisiana  70128.

45.     On or about February 7, 2007, "Gwen Moyo, 261 Oakmont Dr., New
        Orleans, LA," sent bond documents via Federal Express to "Terry Branch,
        Strategic Visions, 434 N. Walnut Bend Road, Cordova, TN."

46.     On or about May 2, 2007, **MOYO** caused Stearns Bank, St. Cloud, Minnesota, to mail a check, via U.S. Postal Service, in the amount of $142,252.04 to **CMAG**, 261 Oakmont Drive, New Orleans, Louisiana 70128.

47.     On or about May 8, 2007, Stearns Bank received a wire communication from **AA COMMUNICATIONS** with the following instructions:  AA Communications, Inc., Post Office Box 27740, Las Vegas, Nevada 89126, at Wells Fargo Bank account number xxxxxx5795.  Also noted in the fax was the following:  "Attached please find the copy of the void check, it will be sent back to you today."

48.     On or about June 5, 2007, the owner of the C.D. Champion Hotels project demanded from **MOYO** a return of the "deposit for the performance and payment bond."  **MOYO** responded in an e-mail wired on that same date:  "As previously stated, Strategic is our client and while we refused to bond the contract 'as is', he has rights etc., as we were also the risk manager, which is why the risk management fee was paid.  We are going to submit release forms to everyone, once I get them from legal and I'll advise you from there."

**MPC Plumbing**

49.     On or about November 10, 2006, **MOYO** caused Sun-Tech, on behalf of MPC Plumbing Contractors Corp., to mail via Federal Express, a post-dated check in the amount of $27,440 as a bond premium for the #6 Key

22

Largo School Project. The check was dated November 30, 2006, and was made payable to **AA COMMUNICATIONS**.

50.      On or about November 17, 2006, **MOYO** caused MPC Plumbing to make a wire transfer in the amount of $1,960 from Wachovia Bank in Florida to **AA COMMUNICATIONS, INC.**, account number xxxxx1910 at Hibernia National (Capital One Bank) in New Orleans, Louisiana.

51.      On or about November 17, 2006, **AA COMMUNICATIONS** issued payment and performance bonds to MPC Plumbing in the amount of $980,000 each, for the #6 Key Largo School Project with First Nations as the purported surety.

52.      On or about November 17, 2006, "Gwen Moyo, 261 Oakmont Drive, New Orleans, LA," sent bond documents via Federal Express to "Craig Greene, 4822 S.W. 159 Avenue, Hollywood, FL."

53.      On or about December 8, 2006, the First Nations bonds for MPC Plumbing's #6 Key Largo School Project were rejected because First Nations was not listed as a certified surety.

54.      On or about January 9, 2007, **MOYO** caused MPC Plumbing to make a wire transfer in the amount of $27,440 from Wachovia Bank in Florida to **GWENDOLYN JOSEPH**, Account Number XXXX5772 at Compass Bank in Birmingham, Alabama. The wire transfer served as replacement funds for a check that had been returned by the bank for insufficient funds.

55. On or about January 24, 2007, **MOYO** caused MPC Plumbing to send bond related documents to Capital One Bank in New Orleans, Louisiana via Federal Express.

56. On or about March 19, 2007, **ZOUCHA**, in Oceanside, California, issued an individual performance surety bond to MPC Plumbing in the amount of $980,000 for the #6 Key Largo School Project.

57. On or about March 19, 2007, **MOYO** caused **ZOUCHA** to send bond documents via Federal Express to MPC Plumbing in Miami, Florida.

**VDI Drywall**

58. On or about November 10, 2006, **MOYO** caused Sun-Tech, on behalf of VDI Drywall, Inc., to mail via Federal Express, a check in the amount of $40,800 as a bond premium for the Jenny Tower Project. The check was dated December 15, 2006, and was made payable to **AA COMMUNICATIONS** with instructions on the memo line "deposit 12-15-06."

59. On or about November 20, 2006, an e-mail was sent from Sun-Tech to David Leyva, d/b/a VDI Drywall with a bond invoice from **AA COMMUNICATIONS**, 261 Oakmont Drive, New Orleans, Louisiana, 70128 dated 11/20/06 in the amount of $40,800.

60.    On or about December 6, 2006, **AA COMMUNICATIONS** issued payment and performance bonds to VDI Drywall in the amount of $1,360,000 each, for the Jenny Tower Project with First Nations as the purported surety.

61.    On or about December 12, 2006, "Gwen Moyo, 261 Oakmont Drive, New Orleans, LA," sent bond documents via Federal Express to "Craig Greene, 4822 S.W. 159 Avenue, Hollywood, FL."

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 6

### MAIL FRAUD

A.    The allegations contained in Count 1, Sections A and B are reincorporated herein by reference.

B.    **MAILINGS**

On or about the dates listed below, in the Eastern District of Louisiana, the defendants, **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo, AA COMMUNICATIONS, INC. , CAPITAL MANAGEMENT AND ASSET GROUP**, and **JAMES ZOUCHA**, aided and abetted by **DERRICK D.T. SHEPHERD**, and others as set forth below, for the purpose of executing the scheme and artifice to defraud set forth in Count 1, Section B, knowingly and willfully caused construction payment, performance, and bid bonds and related materials, invoices, correspondence, and demands for premium payments, to be placed in the United States Mail and interstate commercial carriers for delivery to victims and other recipients in the cities listed below:

25

| COUNT | DATE | SENDER | RECIPIENT | CONTENTS | DEFENDANTS |
|-------|------|--------|-----------|----------|------------|
| 2 | 08/28/2006 | Amanda Phillips GSDI Mandeville, LA | Gwen Moyo AA Communications Baton Rouge, LA | $129,680 Cashiers Check | **Moyo AA Communications Zoucha** |
| 3 | 08/30/2006 | UACL James Zoucha Oceanside, CA | Amanda Phillips GSDI Mandeville, LA | Payment Performance Bonds | **Moyo AA Communications Zoucha** |
| 4 | 12/22/2006 | Derrick Shepherd Marrero, LA | James Taylor Lancaster, CA | $10,000 Check | **Moyo AA Communications Shepherd** |
| 5 | 01/24/2007 | MPC Plumbing Miami, FL | Capital One Bank New Orleans, LA | Contract & Bond Related Documents | **Moyo AA Communications Shepherd** |
| 6 | 05/02/2007 | Stearns Bank St. Cloud, MN | CMAG New Orleans, LA | $142,252.04 Premium Check | **Moyo AA Communications CMAG Shepherd** |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 7 - 15

## WIRE FRAUD

A.      The allegations contained in Count 1, Sections A and B are reincorporated herein by reference.

B.      **WIRES**

On or about the dates listed below, in the Eastern District of Louisiana, **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo, AA COMMUNICATIONS, INC. , CAPITAL MANAGEMENT AND ASSET GROUP, JAMES ZOUCHA,** and others, for the purpose of executing the scheme and artifice to defraud set forth in Count 1, Section B, knowingly and willfully caused construction, payment, performance, and bid bonds and

26

related materials, invoices, and demands for premium payments to be transmitted by means of wire communications placed in interstate commerce for delivery to victims and other recipients in the cities listed below:

| COUNT | DATE | SENDER | RECIPIENT | CONTENTS |
|---|---|---|---|---|
| 7 | 03/15/2006 | Bank of Bartlett Cordova, TN | Hibernia Bank New Orleans, LA | Capital One Wire Transfer Documents |
| 8 | 08/18/2006 | Tim Kirk American Surety Cypress, TX | GSDI Mandeville, LA | Fax re: Payment Options |
| 9 | 08/21/2006 | Tim Kirk American Surety Cypress, TX | GSDI Mandeville, LA | Fax re: Moyo's Payment Requirements |
| 10 | 08/25/2006 | Tim Kirk American Surety Cypress, TX | GSDI Mandeville, LA | Fax re: Moyo's Payment Requirements |
| 11 | 08/28/2006 | Tim Kirk American Surety Cypress, TX | GSDI Mandeville, LA | Faxed Wire Instructions |
| 12 | 08/28/2006 | Tim Kirk American Surety Cypress, TX | GSDI Mandeville, LA | Faxed Cashier's Check Instructions |
| 13 | 08/30/2006 | Tim Kirk American Surety Cypress, TX | GSDI Mandeville, LA | Fax re: Not Releasing Bond Until Payment in Full |
| 14 | 08/30/2006 | GSDI Mandeville, LA | Tim Kirk American Surety Cypress, TX | Fax re: Transfer Confirmation |
| 15 | 11/17/2006 | MPC Plumbing Wachovia Bank Boca Raton, FL | AA Communications Capital One Bank New Orleans, LA | Capital One Wire Transfer Documents |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 16 - 24

**AT ALL TIMES MATERIAL HEREIN:**

A.      The allegations contained in Count 1, Sections A and B are reincorporated herein by reference.

B.      Beginning at a date unknown, but prior to January 1, 2006, through October 18, 2007, in the Eastern District of Louisiana and elsewhere, **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo,** an individual who had been convicted of a criminal felony involving dishonesty or a breach of trust, did willfully engage in the business of insurance whose activities affected interstate commerce and participated in such business on the dates and instances detailed below:

| COUNT | DATES | CONTRACTOR | PROJECT | PURPORTED INSURER |
|-------|-------|------------|---------|-------------------|
| 16 | 02/17/06 | Templebloc Inc. | Old St. Paul Missionary Baptist Church | First Nations |
| 17 | 08/23/06 | Great Southern Dredging, Inc. | St. Tammany Recreation District No. One | UACL |
| 18 | 12/06/06 | Carles Construction Inc. | Jenny Tower FL | First Nations |
| 19 | 12/07/06 | VDI Drywall | Jenny Tower FL | First Nations |
| 20 | 12/12/06 | Suntech Plumbing Contractors | Arté Park LLC Arté City North Building | First Nations |
| 21 | 12/12/06 | Suntech Plumbing Contractors | Arté Park LLC Park Villas East & West | First Nations |
| 22 | 12/14/06 | Suntech Plumbing Contractors | Arté Park LLC Arté City South Building | First Nations |

| COUNT | DATES | CONTRACTOR | PROJECT | PURPORTED INSURER |
|-------|-------|------------|---------|-------------------|
| 23 | 12/23/06 | Archon Aire Management | City Palms 430 Hibiscus LP | First Nations |
| 24 | 04/22/07 | Strategic Vision Inc. | CD Champion Hotels Inc. Microtel Inn & Suites | Bond premium paid, bond not issued |

all in violation of Title 18, United States Code, Section 1033(e).

## COUNT 25

**A.    AT ALL TIMES MATERIAL HEREIN:**

1.    The allegations contained in Count 1, Sections A and B are reincorporated herein by reference.

2.    Dryades Savings Bank was a financial institution located in New Orleans, Louisiana.

3.    Capital One (formerly Hibernia National Bank) was a financial institution located in New Orleans, Louisiana.

4.    Wells Fargo Bank was a financial institution located in Las Vegas, Nevada.

5.    EKN Financial Services, Inc. was a financial institution located in New York, New York.

6.    Specified unlawful activity includes mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343 involving mailings and wire transmissions in furtherance of the scheme.

**B.**   **CONSPIRACY**

Between a time unknown, but before 2006, and continuing through the date of

this Superseding Indictment, in the Eastern District of Louisiana and elsewhere, the

defendants **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo, AA**

**COMMUNICATIONS, INC. , DERRICK D.T. SHEPHERD, CAPITAL MANAGEMENT**

**AND ASSET GROUP**, **JAMES ZOUCHA**, and others, did, with the intent to promote the

carrying on of the specified unlawful activity set forth in paragraph 6, above, combine,

conspire, confederate and agree with each other to knowingly and willfully conduct and

attempt to conduct a financial transaction affecting interstate and foreign commerce, as

further described below which involved the proceeds of said specified unlawful activity

with the intent to promote the carrying on of specified unlawful activity and that while

conducting and attempting to conduct such financial transaction knew that the property

involved in the financial transaction, that is funds, represented the proceeds of some

form of unlawful activity in violation of Title 18, United States Code, Sections

1956(a)(1)(A)(i);

**C.**   **OVERT ACTS**

On or about the dates below, **SHEPHERD** caused the following checks related to

bond premiums and made payable to **AA COMMUNICATIONS** to be deposited in his

Shepherd and Associates, LLC Trust Account at Dryades Savings Bank, account

number xxxxx7016:

| OVERT ACT | DATE DEPOSITED | DATE OF CHECK | SOURCE/CONTRACTOR | AMOUNT |
|-----------|----------------|---------------|-------------------|--------|
| 1 | 12/13/2006 | 12/15/2006 | VDI Drywall, Inc. | $40,800.00 |
| 2 | 12/13/2006 | 12/15/2006 | Sun-Tech Plumbing Contractors | $21,420.60 |
| 3 | 12/13/2006 | 11/30/2006 | MPC Plumbing Contractors, Corp. | $27,440.00 |
| 4 | 12/19/2006 | 12/15/2006 | Sun-Tech Plumbing Contractors | $26,608.89 |
| 5 | 12/19/2006 | 12/11/2006 | Pershing/AXA Advisors | $24,416.72 |
| | | | **Total** | $140,686.21 |

On or about the dates below, **SHEPHERD** caused the following checks to be written:

| OVERT ACT | DATE OF CHECK | CHECK NUMBER | PAYEE | AMOUNT |
|-----------|---------------|--------------|-------|--------|
| 6 | 12/18/2006 | 1570 | Gwendolyn Joseph | $45,000.00 |
| 7 | 12/18/2006 | 1571 | Gwendolyn Joseph | $5,000.00 |
| 8 | 12/18/2006 | 1573 | James Zoucha | $5,000.00 |
| 9 | 12/18/2006 | 1574 | Ping Yu (sic) | $5,000.00 |
| 10 | 12/18/2006 | 1575 | Gwendolyn Joseph | $5,000.00 |
| 11 | 12/22/2006 | 1577 | James Taylor | $10,000.00 |
| | | | **Total** | $75,000.00 |

12.     On or about December 21, 2006, Yu Peng cashed Shepherd & Associates check #1574 at the direction of **MOYO** and immediately turned over the proceeds to **MOYO**.

On or about the dates below, **SHEPHERD** deposited checks from his Shepherd and Associates, LLC Trust Account at Dryades Savings Bank, Account #xxxxx7016, into his Shepherd and Associates, LLC operating account at Dryades Savings Bank,

Account #xxxxx7008; in the memo section of each check is written "AA

Communications."

| OVERT ACT | DATE OF DEPOSIT | CHECK NUMBER | DATE OF CHECK | AMOUNT |
|---|---|---|---|---|
| 13 | 12/19/2006 | 1569 | 12/13/2006 | $45,000.00 |
| 14 | 12/20/2006 | 1576 | 12/19/2006 | $10,000.00 |

On or about the date below, **SHEPHERD** deposited a check from his Shepherd

and Associates, LLC operating account at Dryades Savings Bank, Account #xxxxx7008,

into his Derrick D.T. Shepherd personal account at Capital One Bank, Account

#xxxxx0483.

| OVERT ACT | DATE OF DEPOSIT | CHECK NUMBER | DATE OF CHECK | AMOUNT |
|---|---|---|---|---|
| 15 | 12/19/2006 | 2333 | 12/13/2006 | $15,000.00 |

On or about the date below, **SHEPHERD** deposited checks from his Shepherd

and Associates, LLC operating account at Dryades Savings Bank, Account #xxxxx7008,

into his Shepherd and Associates, LLC Trust Account at Dryades Savings Bank,

Account #xxxxx7016.

| OVERT ACT | DATE OF DEPOSIT | CHECK NUMBER | DATE OF CHECK | AMOUNT |
|---|---|---|---|---|
| 16 | 12/27/2006 | 2337 | 12/22/2006 | $ 8,000.00 |

17.   On or about December 21, 2006, **SHEPHERD** wrote a check in the

amount of $20,000 for his campaign expenses from his Shepherd and Associates, LLC

operating account at Dryades Savings Bank, Account #xxxxx7008; in the memo section

of each check is written "AA Communications."

On or about the dates below, **MOYO** and **AA COMMUNICATIONS** caused the following financial transactions from **AA COMMUNICATIONS'** account at Capital One, Account #xxxxx1910:

| OVERT ACT | DATE OF TRANSACTION | TYPE OF TRANSACTION | BENEFICIARY/PAYEE | AMOUNT |
|---|---|---|---|---|
| 18 | 08/31/2006 | Wire transfer | Pershing, LLC | $300,000.00 |
| 19 | 10/03/2006 | Wire transfer | Smart Unique Services | $13,500.00 |
| 20 | 10/10/2006 | Wire transfer | Merrill Lynch | $26,000.00 |
| 21 | 10/10/2006 | Wire transfer | Legent Clearing, LLC | $600,000.00 |
| 22 | 11/13/2006 | Wire transfer | XYZ Services | $100,000.00 |

On or about the dates below, **MOYO** and **AA COMMUNICATIONS** caused the following financial transactions from **AA COMMUNICATIONS'** account at Capital One, Account #xxxxxx2303:

| OVERT ACT | DATE OF TRANSACTION | TYPE OF TRANSACTION | BENEFICIARY/PAYEE | AMOUNT |
|---|---|---|---|---|
| 23 | 09/14/2006 | Transfer | AA Communications Trust | $50,000.00 |
| 24 | 09/21/2006 | Counter Withdrawal | Gwen Moyo | $300,000.00 |
| 25 | 10/10/2006 | Online Transfer | AA Communications, Inc. | $700,000.00 |

On or about the dates below, **MOYO** and **AA COMMUNICATIONS** caused the following financial transactions from **AA COMMUNICATIONS'** account at Wells Fargo Bank, Account #xxxxxx5795:

| OVERT ACT | DATE OF TRANSACTION | TYPE OF TRANSACTION | BENEFICIARY/PAYEE | AMOUNT |
|---|---|---|---|---|
| 26 | 01/25/2007 | Wire Transfer | XYZ Services | $20,000.00 |
| 27 | 01/25/2007 | Wire Transfer | Gwen Joseph | $12,000.00 |

| OVERT ACT | DATE OF TRANSACTION | TYPE OF TRANSACTION | BENEFICIARY/PAYEE | AMOUNT |
|---|---|---|---|---|
| 28 | 05/11/2007 | Check | Gwendolyn Joseph | $100,000.00 |
| 29 | 06/04/2007 | Check | Gwendolyn Joseph | $50,000.00 |
| 30 | 07/31/2007 | Check | ABC Group | $15,000.00 |

On or about the dates below, **MOYO** and **AA COMMUNICATIONS** caused the following financial transactions from **AA COMMUNICATIONS'** account at EKN Financial Services, Inc., Account #xxxxxxx3675:

| OVERT ACT | DATE OF TRANSACTION | TYPE OF TRANSACTION | BENEFICIARY/PAYEE | AMOUNT |
|---|---|---|---|---|
| 31 | 11/28/2006 | Wire Transfer | XYZ Services | $100,000.00 |
| 32 | 12/01/2006 | Wire Transfer | Gwendolyn Joseph | $40,000.00 |
| 33 | 01/24/2007 | Wire Transfer | XYZ Services | $100,000.00 |

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 26 - 41

On or about the dates indicated below, in the Eastern District of Louisiana and elsewhere, defendants **MOYO and AA COMMUNICATIONS**, did knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, and transfer of funds in the amounts indicated below, such property having been derived from a specified unlawful activity, that is mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343 involving mailings and wire transmissions in furtherance of the scheme;

34

| COUNT | DATE OF TRANSACTION | TYPE OF TRANSACTION | BENEFICIARY/PAYEE | AMOUNT |
|-------|---------------------|---------------------|-------------------|--------|
| **Capital One Account #xxxxx1910** | | | | |
| 26 | 08/31/2006 | Wire Transfer | Pershing, LLC | $300,000.00 |
| 27 | 10/03/2006 | Wire Transfer | Smart Unique Services | $13,500.00 |
| 28 | 10/10/2006 | Wire Transfer | Merrill Lynch | $26,000.00 |
| 29 | 10/10/2006 | Wire Transfer | Legent Clearing, LLC | $600,000.00 |
| 30 | 11/13/2006 | Wire Transfer | XYZ Services | $100,000.00 |
| **Capital One Account #xxxxxx2303** | | | | |
| 31 | 09/14/2006 | Transfer | AA Communication Trust | $50,000.00 |
| 32 | 09/21/2006 | Counter Withdrawal | Gwen Moyo | $300,000.00 |
| 33 | 10/10/2006 | Online Transfer | AA Communications, Inc. | $700,000.00 |
| **Wells Fargo Account #xxxxxx5795** | | | | |
| 34 | 01/25/2007 | Wire Transfer | XYZ Services | $20,000.00 |
| 35 | 01/25/2007 | Wire Transfer | Gwen Joseph | $12,000.00 |
| 36 | 05/11/2007 | Check | Gwendolyn Joseph | $100,000.00 |
| 37 | 06/04/2007 | Check | Gwendolyn Joseph | $50,000.00 |
| 38 | 07/31/2007 | Check | ABC Group | $15,000.00 |
| **EKN Financial Services Account #xxxxxxx3675** | | | | |
| 39 | 11/28/2006 | Wire Transfer | XYZ Services | $100,000.00 |
| 40 | 12/01/2006 | Wire Transfer | Gwendolyn Joseph | $40,000.00 |
| 41 | 01/24/2007 | Wire Transfer | XYZ Services | $100,000.00 |

all in violation of Title 18, United Sates Code, Sections 1957 and 2.

## NOTICE OF MAIL FRAUD AND WIRE FRAUD FORFEITURE

1.      The allegations of Counts 1 through 15 of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 371, 1341, 1343 and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

2.      As a result of the offenses alleged in Counts 1 through 15, defendants, **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo, AA COMMUNICATIONS, INC., DERRICK D.T. SHEPHERD, CAPITAL MANAGEMENT AND ASSET GROUP,** and **JAMES ZOUCHA,** shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Sections 371, 1341, and 1343.

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;
      b.      has been transferred or sold to, or deposited with, a third person;
      c.      has been placed beyond the jurisdiction of the Court;
      d.      has been substantially diminished in value; or
      e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Sections 371, 1341, 1343, and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

## NOTICE OF MONEY LAUNDERING FORFEITURE

1.      The allegations of Counts 26 through 41 of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

2.      As a result of the offenses alleged in Count 26 through 41, defendants, **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo, AA COMMUNICATIONS, INC., DERRICK D.T. SHEPHERD, CAPITAL MANAGEMENT AND ASSET GROUP,** and **JAMES ZOUCHA**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, all property real or personal, involved in the aforesaid offenses and all property traceable to such property in violation of Title 18, United States Code, Sections 1956 and 1957.

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

           a.      cannot be located upon the exercise of due diligence;

           b.      has been transferred or sold to, or deposited with, a third person;

           c.      has been placed beyond the jurisdiction of the Court;

           d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be
subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section

982(b)(1) to seek forfeiture of any other property of said defendants up to the value of

the above forfeitable property.

All in violation of Title 18, United States Code, Sections 982, 1956, and 1957.

A TRUE BILL:

_____
FOREPERSON


_____
JIM LETTEN
United States Attorney
Louisiana Bar Roll No. 8517


_____
JAN MASELLI MANN
First Assistant U.S. Attorney
Chief, Criminal Division
Louisiana Bar Roll No. 9020


_____
MICHAEL W. MAGNER
Assistant United States Attorney
Louisiana Bar Roll No. 1206


_____
GREGORY KENNEDY
Assistant United States Attorney
Louisiana Bar Roll No. 20896


New Orleans, Louisiana
April 10, 2008

No.07-384 "J" (1)

FORM OBD-34

# UNITED STATES DISTRICT COURT

Eastern _District of_ Louisiana

Criminal _Division_

## THE UNITED STATES OF AMERICA

vs.

GWENDOLYN JOSEPH MOYO,
a/k/a Gwen Moyo
DERRICK D.T. SHEPHERD
AA COMMUNICATIONS, INC.
CAPITAL MANAGEMENT AND ASSET GROUP
JAMES ZOUCHA

## INDICTMENT

SUPERSEDING INDICTMENT FOR CONSPIRACY TO COMMIT
MAIL AND WIRE FRAUD, MAIL FRAUD, WIRE FRAUD,
ENGAGING IN THE BUSINESS OF INSURANCE AFTER
HAVING BEEN CONVICTED OF A CRIME INVOLVING
DISHONESTY AND A BREACH OF TRUST, CONSPIRACY TO
COMMIT MONEY LAUNDERING, AND MONEY LAUNDERING

VIOLATIONS: 18 USC § 371        18 USC § 2
            18 USC § 1341       18 USC § 1956(h)
            18 USC § 1343       18 USC § 1957

_A true bill_

_____
Foreperson

Filed in open court this _____ day, of
_____ A.D. 2008.

_____
Clerk

Bail, $ _____

MICHAEL W. MAGNER
Assistant United States Attorney