1

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Criminal Action |
| | * | No. 07-384 |
| Plaintiff, | * | |
| | * | Section "J"(6) |
| v. | * | |
| | * | New Orleans, Louisiana |
| DERRICK D.T. SHEPHERD, | * | July 28, 2008 |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


### INITIAL APPEARANCE BOND VIOLATION
### BEFORE THE HONORABLE LOUIS MOORE, JR.,
### UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          United States Attorney's Office
                            By:  GREGORY M. KENNEDY, ESQ.
                            By:  MICHAEL W. MAGNER, ESQ.
                            Hale Boggs Federal Building
                            500 Poydras Street, Room 210
                            New Orleans, Louisiana 70130

For the Defendant:          Law Office of Clarence Roby, Jr.
                            By:  CLARENCE ROBY, JR., ESQ.
                            3701 Canal Street, Suite U
                            New Orleans, Louisiana 70119

                            Glass & Reed
                            By:  JOHN W. REED, ESQ.
                            530 Natchez Street
                            New Orleans, Louisiana 70130

Court Audio Operator:       (Magistrate Clerical)

Transcriptionist:           Dorothy Bourgeois
                            c/o U.S. District Court
                            (504) 589-7721

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

P R O C E E D I N G S

(Monday, July 28, 2008)

1    THE CLERK:  Criminal Action 2007-384, United States

2    of America v Derrick Shepherd set for an initial appearance on

3    a bond violation.

4    MR. MAGNER:  Good afternoon, Your Honor; Michael

5    Magner for the United States along with AUSA Greg Kennedy.

6    MR. REED:  John Reed and Clarence Roby, Your Honor,

7    for the Defendant, Derrick Shepherd.  Mr. Shepherd is present

8    in Court.

9    THE COURT:  Thank you, Counselors.

10    All right, Mr. Shepherd, you're here today for your

11    initial appearance concerning allegations that you're in

12    violation of your bond.  You're presumed to be innocent.

13    You're entitled to have the representation of your counselors

14    throughout all proceedings.  You're entitled to have a copy of

15    this motion, this Petition for Revocation that was filed.

16    Have you and your counselors received a copy of it?

17    MR. REED:  We have, Your Honor.  We haven't had an

18    opportunity to peruse it in great deal, but we do have a copy.

19    THE COURT:  Do you all want to have a chance to look

20    at it?  Just have a seat with your client at the table if you

21    need that time to look at it.

22    MR. REED:  No, Your Honor, we can proceed.

23    THE COURT:  All right.  Do you require me to read it

1    or do you all waive the reading?

2         MR. REED:  We waive the reading, Your Honor.

3         THE COURT:  All right.  As such Mr. Shepherd is

4    entitled to a revocation hearing, representation of counsel.

5    He's presumed to be innocent, having been previously placed on

6    supervision regarding other charges pending against him under

7    07-384 "J."  He'll have to answer the Rule to Show Cause why

8    his bail should not be revoked based on the allegations

9    contained herein.

10        All right, when can y'all be ready to proceed?

11        MR. MAGNER:  Your Honor, we've given it some thought.

12   We'd like to do it as quickly as possible, but we have not been

13   able to subpoena the necessary witnesses at this moment, so we

14   would ask for a hearing Wednesday at two o'clock.

15        MR. REED:  Your Honor, I think we would ask for a

16   hearing tomorrow at two o'clock.

17        MR. MAGNER:  I don't believe we can be ready in that

18   time.

19        THE COURT:  Let me say this to you all --

20        MR. REED:  Your Honor, I have no objection to

21   Wednesday if the Defendant is going to be released pending the

22   hearing, but if he's not --

23        THE COURT:  Well, that's the problem whether or not

24   he can be released pending a hearing.  That's the problem once

25   a person -- a revocation has been scheduled.  That's why the

1    rules provide for a speedy hearing on it, just like anyone

2    else.  I mean once the rule is filed and I have to either

3    proceed with a hearing or if detention is recommended or moved

4    for, I have no choice in the matter.  I can't set a bond.

5              I presume the recommendation is for detention?

6              MR. MAGNER:  Yes, Your Honor.  The Government moves

7    for detention based on danger.

8              THE COURT:  Well, he's entitled to an immediate

9    hearing.

10             MR. MAGNER:  I think with an allowance for reasonable

11   time, Your Honor, to allow the Government to subpoena the

12   necessary witnesses, subpoena the 911 tape, gather the

13   necessary documentary evidence, the photographs of the crime

14   scene; we just need some time to get that together.

15             THE COURT:  Well, there's a police report here.

16   There's an exhibit for an arrest warrant.  There's an exhibit

17   for a search warrant and it looks pretty detailed to me.  I

18   mean I can't tell the Government how to run its business, but

19   at the same time I already know -- I don't know from this

20   record, but I know that he's been released already from state

21   court because the Marshals had to go and proceed by way of the

22   court order that they received to execute what they had to

23   execute.  He's already been released on a state bond.

24             MR. MAGNER:  Yes, Your Honor.

25             THE COURT:  I don't think that's reason enough to

1    continue where he has to be incarcerated.  That's just the way

2    I feel about it.  Now, if you can show reasons for it, I'll

3    look at it.  But he wasn't -- what type of the bond was this

4    man released on, Mr. Magner?

5                 MR. REED:  Your Honor, he was released on his own

6    personal surety bond.

7                 THE COURT:  All right, Mr. Reed.  Yeah, here it is in

8    the back.

9                 MR. REED:  He came in at -- he was contacted by

10   Mr. Lamy over the weekend.  He responded to that contact.  He

11   came in to Pretrial Services this morning at ten o'clock with

12   me, met with Mr. Lamy knowing what the situation was having

13   made bond yesterday.  We received a call today.  We knew what

14   the situation was here and he came voluntarily to the

15   courthouse to meet with the Court.  Those are the present

16   circumstances.

17                THE COURT:  Well, I see here bail was set at $5,000

18   unsecured, you're correct.  Travel restricted because of this

19   bond that was originally set in this case.  Travel restricted

20   to the continental United States except for travel required by

21   the U.S. Military or the Louisiana Legislature.  No contact

22   with co-defendants or Government witnesses except through

23   attorney.  Pretrial Services supervision and the general

24   conditions of bond of course were imposed, that is no violation

25   of state, local, or federal law while you're out on a bond, et

1    cetera.  All right.

2               MR. REED:  We would also represent to the Court that

3    I have been advised that Ms. Ashford filed a request with the

4    District Attorney's Office today indicating her desire not to

5    pursue criminal charges of this matter.

6               MR. MAGNER:  Well, of course, Your Honor, as of

7    Saturday night when she had been struck by the Defendant she

8    said just the opposite, that she did wish to proceed.

9               THE COURT:  It's all in the papers here.

10              MR. MAGNER:  Yes, it is.  And of course in these type

11   of situations this is not particularly unusual.  I haven't been

12   able to verify what Mr. Reed has said, but, you know, there was

13   a former relationship between the two, but obviously she called

14   911 at two or three o'clock in the morning because the

15   Defendant had broken into her house, had knocked down her door

16   to her bedroom, had struck her, had stolen her money, --

17              THE COURT:  Yeah, I read that.

18              MR. MAGNER:  -- had stolen her cell phone.  So, under

19   the circumstances, Your Honor, under the Code, particularly

20   3142(d)(1), it's our understanding that if the Government moves

21   for detention --

22              THE COURT:  Yeah, but that's not a -- that's usually

23   at an initial appearance.  You're talking about moving for

24   revocation.  I may have misspoke.

25              MR. MAGNER:  Yeah, but this provides for a temporary

1  detention to permit revocation of conditional release.

2          THE COURT:  All right, which statute are you talking

3  about, 31 what, sir?

4          MR. MAGNER:  Yeah, 3142(d)(1), and if at the time the

5  offense was committed the defendant was on release pending

6  trial for a felony under federal law, if the Government moves

7  for detention under those circumstances it's our understanding

8  that the law requires that the judicial officer shall order the

9  detention of such person to allow the necessary time to have a

10 hearing.

11         And, you know, we just received these materials

12 ourselves this afternoon after lunch.  We immediately brought

13 them to Mr. Lamy.  He then prepared his Rule to Revoke and

14 brought it to the Court's attention.  But --

15         THE COURT:  Just a minute, 3140 -- I want to make

16 sure I'm looking at it --

17         MR. MAGNER:  Yes, 3142(d)(1).

18         THE COURT:  Go ahead now, okay.

19         MR. MAGNER:  But basically, you know, so we've had

20 essentially no time to prepare this thing other than prepare

21 and read the materials that the Sheriff's Office has sent over,

22 but we'll need time to subpoena witnesses, to subpoena

23 documents, to subpoena tapes to get them here and I just don't

24 that a 48-hour continuance is asking too much.

25         MR. REED:  If I can respond to that?

1          THE COURT:  Yes.

2          MR. REED:  I think the Government has somewhat

3    quickly skipped over a critical part of that provision.

4          THE COURT:  And?

5          MR. REED:  "D" does speak to temporary detention if

6    you determine such person was on release pending trial and

7    provides for temporary detention.  However, in order to grant

8    that extension you must also find that such person may flee or

9    pose a danger to any other person or to the community.  I think

10   in order to order that detention you have to make that finding.

11         MR. MAGNER:  Well, that's already been done,

12   Your Honor, by a state court judge who has found that there is

13   probable cause that this man assaulted a woman, stole her cell

14   phone, stole her money, and entered her home in the wee morning

15   hours without her permission.  So, that probable cause has

16   already been determined.  Of course we will proffer the

17   evidence that is contained in the search warrant affidavit and

18   the arrest warrant affidavit for the Court's purpose, but we

19   need to get police officers and the like here to go past that.

20         MR. REED:  But, Your Honor, in the meantime that begs

21   the question whether such person may flee, he has appeared

22   voluntarily, or presently poses a continuing danger to any

23   other person or the community.  And I think at this point

24   pending their adducing further evidence there is insufficient

25   basis for the Court to find that to hold the Defendant pending,

1   you know, such delayed proceeding as they're requesting.

2           THE COURT:  What type of bond was he released on at

3   the state level?

4           MR. REED:  A PSBU $2,000 -- $10,000 --

5           The Defendant thinks $5,000, Your Honor.

6           THE COURT:  Five what?

7           MR. REED:  PSBU.

8           MR. MAGNER:  As I read the statute, Your Honor, it's

9   disjunctive.  It's whether he may flee or pose a danger to any

10  other person in the community.

11          MR. REED:  True.

12          MR. MAGNER:  And obviously there's been a probable

13  cause finding that he does in fact pose such a danger.

14          THE COURT:  There was a probable cause finding that

15  he should be arrested --

16          MR. MAGNER:  Yes.

17          THE COURT:  -- that's what that was, and that he be

18  searched.  That's what these papers say.

19          MR. MAGNER:  Right.

20          MR. REED:  That is a state finding of probable cause

21  to believe an offense has been committed, but the continuing

22  issue on a person remaining out on bail is whether they are or

23  are not presently a danger of flight, which patently is not, or

24  presently a danger to a person.  I would add that there is at

25  present a stay away order in state court.  Although I have some

1  information that the victim -- alleged victim, Ms. Ashford, may

2  seek to have that withdrawn, but I'm not going to make a

3  representation --

4          THE COURT:  There is an active stay away --

5          MR. REED:  Yes.

6          THE COURT:  -- like a restraining order?

7          MR. REED:  I have seen a copy of it.  I don't have it

8  with me.

9          THE COURT:  A restraining order, so to speak?

10         MR. REED:  Yes.  But I have seen an affidavit signed

11 by Ms. Ashford, and of course she does not dictate those

12 matters, indicating her desire the charges not be prosecuted

13 against Mr. Shepherd.  And I have been advised that it's been

14 delivered to the District Attorney's Office.

15         THE COURT:  Let me just go through this and try to

16 see where he's coming from here on (d)(1) temporary detention

17 to permit revocation of conditional release, et cetera.  "If

18 the judicial officer determines that such person (a) is or was

19 at the time the offense was committed on release pending trial

20 for a felony," so the little "i" is there, "on federal, state,

21 or local law" under those, "release pending imposition or

22 execution of a sentence," which does not apply, probation does

23 not apply -- and there is a conjunction, "and (2) such person

24 may flee or pose a danger to any other person or the

25 community."

1          MR. REED:  You know I got some --

2          THE COURT:  "Such judicial officer" --

3          We'll let you speak.

4          MR. REED:  Sorry.

5          THE COURT:  -- "shall order detention of such person

6    for a period of not more than ten days excluding Saturday,

7    Sunday, holidays, and direct the attorney for the Government to

8    notify the appropriate court, probation, parole officer, or

9    local or state law enforcement," et cetera.

10          All right, yes, Counsel Reed?

11          MR. REED:  Your Honor, I just noticed (d) is

12   "Temporary detention to permit revocation of conditional

13   release, deportation, or exclusion."  Plainly this is not an

14   exclusion.  It is not a deportation.

15          THE COURT:  I agree with you.

16          MR. REED:  And it's not --

17          MR. MAGNER:  But it's a conditional release.

18          THE COURT:  Is it a conditional release?

19          MR. MAGNER:  Yes.

20          MR. REED:  I don't think it's a conditional release.

21          THE COURT:  That's what the whole definition goes to

22   conditional release.

23          MR. MAGNER:  This is 3142, this is the Federal Mail

24   Statute.  So, he was released on conditions under 3142(c).

25   We've now moved for his -- actually the Pretrial Officer moved

1    for revocation of that release.  So, we determined that he was

2    pending trial for a felony under federal law.  We've then moved

3    for detention due to the fact that we believe he poses a

4    danger.  So, therefore, when we go further down to 3142(f),

5    we're back at those same procedures that we're used to here,

6    because it involves a crime of violence.  There's a rebuttal

7    presumption.  We've moved for his detention and we've asked for

8    just a very brief continuance to allow us to subpoena the

9    necessary witnesses.

10           If the Court is troubled about delaying to Wednesday,

11   we'll do our best to do it for Tuesday, but I'd rather get it

12   together once and have all the necessary witnesses here so that

13   it can be done properly.

14           MR. REED:  I have no objection to it being done

15   properly, Your Honor.  And everything considered our objection

16   is to detaining the Defendant under these circumstances.  He

17   has responded fully to all the orders of the Court and that

18   there is nothing to indicate that at this point between now and

19   tomorrow or Wednesday that he is a continuing danger to the

20   community or a continuing flight risk.

21           MR. MAGNER:  And I would say no he has not,

22   Your Honor.  He was ordered that he would not violate any state

23   or local laws.  At two o'clock in the morning he decides to go

24   over to an old girlfriend's house, basically knocked down her

25   door, hit her, steal her cell phone, steal her money.  She said

1   she wanted to press charges at that time.  The fact that she's

2   now had some remorse, you know, we're concerned that

3   Mr. Shepherd's publicist at ten o'clock this morning advised

4   that, you know, he thought that there would be a rapprochement

5   and that's particularly concerning when there was this stay

6   order.

7           But he has violated his terms and conditions of

8   release and because of that this should be treated like any

9   other case, any other defendant equal before the law.  And

10  there's no doubt in my mind that the Government would be given

11  an appropriate time necessary to subpoena the proper witnesses

12  to present its case.

13          THE COURT:  Well, --

14          MR. REED:  Your Honor --

15          THE COURT:  -- I just had a case this morning and I

16  was looking at my notes, it's all public record.  It was USA v

17  Anthony Martin on a Motion to Revoke Bail.  He had been

18  arrested coming out of Baton Rouge, if my memory serves me

19  correctly, last week.  He was scheduled for sentencing, that's

20  a difference, he was scheduled for sentencing, if I'm not

21  mistaken this Thursday.  Those of you who were here this

22  morning you may remember that -- I should say earlier this

23  afternoon.  I'm getting disoriented, this afternoon, it

24  happened this afternoon.  And he had been arrested last week

25  and brought before me and he was ordered detained because he

1    had been arrested and didn't report it and some other things

2    that had happened and came before me and was scheduled for

3    sentencing, which is a big different here.  This man is

4    scheduled for a trial sometimes when, in December or October

5    sometime?

6              MR. REED:  October 6.

7              THE COURT:  October.  And the allegations have been

8    made at the state level with regard to a state violation which

9    has not been formally accepted by the District Attorney.  He's

10   been arrested for it.  I agree with everybody here that he's

11   been arrested, but the charges have not been accepted.  So, you

12   know it's not stopping the Government from having a hearing,

13   the question is whether or not there's conditions that I can

14   set upon this man such that he won't pose a danger to the

15   community or anybody else in the community.  I don't think I

16   have a flight risk issue.  I think the whole issue that the

17   Government has argued for is one of danger.  That's what I'm

18   listening to.  That's the reason that you would like to support

19   your motion with regard for detention or revocation of the bail

20   based on danger.  That's what I understand it to be.

21             Now the question is whether or not I have to under

22   this instance make a finding that this man is dangerous even

23   though there's now some statement about a stay order that's

24   been issued and there are now statements that the alleged

25   victim is now wanting to go back on what she said.  That's what

1   I'm looking at.

2          You said treat it like anybody else.  I have to look

3   at it and see whether or not the man should be incarcerated at

4   this point when he's already -- the state authorities who had

5   first instance over this the 24ᵗʰ Judicial District as I

6   understand it in Gretna released him on a bond, on an

7   appearance bond.

8          MR. MAGNER:  Your Honor, there are two other factors

9   here.  There were two other people who the Defendant confronted

10  that night.  It wasn't just the young lady who was struck in

11  her stomach, but her mother and her sister who lived at a

12  different location.  Apparently, Mr. Shepherd went to that

13  location after he was through with the first lady.

14         There's also some indication, Your Honor, and we're

15  trying to run this out right now, we're trying to find out the

16  details, but apparently -- and I'm a little sketchy on the

17  details, but again this is the kind of thing that we would

18  develop you know with more time.  Apparently Mr. Shepherd

19  brought a vehicle to a repair shop sometime over the weekend

20  claiming that there had been a bullet hole in one of his

21  windshields.  Our information's that that is -- that that was a

22  false claim, but we're trying to run that down right now.

23         There's a lot more to this than meets the eye.  This

24  is, you know, one weekend where this Defendant who's facing

25  very, very serious charges decided to basically go on a bender

1  and whack a woman.  I can't say what he's going to do tonight.

2          THE COURT:  I understand you're talking about

3  "whacking," but whatever the situation is we're going to find

4  out at some point.  But that's his choice of words, I'm

5  listening to him --

6          MR. REED:  I'm just objecting to the influence of his

7  choice of words, Your Honor.  First of all we do not accept the

8  allegations as being true, but using terms like "whacking" is

9  totally inappropriate from Mr. Magner.

10          THE COURT:  Well, I understand it's his argument.

11  And all I know is that he's here and we'll see what the

12  situation is.

13          You know another thing, gentlemen, that I'm looking

14  at here --

15          MR. MAGNER:  I mean using her words, her own words,

16  "Mr. Shepherd was very aggressive with me.  I picked up a board

17  that was in the floor to defend myself.  As we sat there and

18  tussled in the chair" --

19          THE COURT:  I read that.  I read all that.  I read

20  all that.  This is what I'm talking about, I'm looking at the

21  law right now.  Why would they say ten days and at regular

22  hearing the Government can only get three or the Defense five?

23  I'm talking about here -- and that's what Mr. Reed was alluding

24  to in (d) temporary detention to permit revocation of

25  conditional release.  Just give me a few minutes to digest

1    this.  I'm trying to see --

2            MR. REED:  It's clearly discretionary with the Court,

3    Your Honor.  To order a temporary detention pending a full

4    hearing you have to conclude that he's a present danger or

5    present flight risk.

6            THE COURT:  And then 3143 specifically deals with

7    release or detention of a defendant pending a sentence on

8    appeal, so you know that's out, and of course factors to be

9    considered.

10           MR. MAGNER:  And, Your Honor, with all due respect, I

11   don't believe it's permissive.  I think under these

12   circumstances I think it's mandatory that because he is

13   awaiting trial on a felony charge.  He's been charged while

14   awaiting trial with a crime of violence.  We believe that it is

15   mandatory that the Defendant be detained pending the hearing.

16   If the Court would like to do the hearing tomorrow, we'll do

17   the hearing tomorrow.  But I think two days is more appropriate

18   under these circumstances.

19           MR. KENNEDY:  And, Your Honor, I could add, Greg

20   Kennedy on behalf of the United States, just one issue.  The

21   Court's concern regarding the Defendant's bond in state court,

22   the state court guarantees the Defendant a bond in any case

23   other than a capital case.  So, therefore, he was by law

24   required to get a bond by the state court.  It was not within

25   the discretion of the court whether to grant him one or not.

1          THE COURT:  Yeah, but the amount is still left up to

2    the judge.  I'm not impressed by that.

3          MR. KENNEDY:  I understand.

4          THE COURT:  The amount is left up to the judge and

5    what type of bond is left to the judge.  I'm not impressed by

6    that at all.  I'm just going to tell you I don't see it that

7    way.

8          MR. MAGNER:  Well, they have very serious

9    overcrowding problems over there in Jefferson Parish and of

10   course their bond situation --

11         THE COURT:  Look, you all --

12         MR. MAGNER:  -- is not exactly a salutary one in

13   recent years.

14         THE COURT:  Yeah, all right.

15         He's not charged over here with a crime of violence.

16   He's charged in state court with a violent crime.  I'm looking

17   at all this.

18         MR. MAGNER:  But on the Rule to Revoke, Your Honor,

19   I'm sorry to interrupt, but he is and looking at 3142 --

20         THE COURT:  You think I can't read, Counselor?  I've

21   looked at.  I'm trying to get what I'm supposed to do on a

22   revocation hearing.

23         MR. MAGNER:  Yes, sir.

24         THE COURT:  That's what I'm trying to figure out

25   right now.  That's what I'm trying to figure out how far does

1    thing go.

2              MR. MAGNER:  And under 3142(f) --

3              MR. REED:  Your Honor, he's charged --

4              MR. MAGNER:  -- it reads, "During a continuance such

5    person shall be detained."

6              THE COURT:  Under certain circumstances.

7              MR. REED:  "F," Your Honor --

8              MR. MAGNER:  Under these circumstances, Your Honor.

9              MR. REED:  "F," Your Honor, is the one that we always

10   use for original charges --

11             THE COURT:  That's correct.

12             MR. REED:  -- not for conditional release issues.

13             THE COURT:  That is correct.  That is correct.

14             MR. REED:  Further, with regards to a crime of

15   violence, this is an unauthorized entry not a crime of

16   violence.  There's a theft, not a crime of violence, and a

17   simple battery, a misdemeanor, though using force is not

18   considered a crime of violence either in the federal system or

19   in the state system.

20             THE COURT:  Very well.

21             MR. MAGNER:  It's also my understanding that it's the

22   Pretrial Officer's position that detention is appropriate under

23   these circumstances, Your Honor.

24             Your Honor, there's one additional thing when

25   convenient.

1          THE COURT:  What's that?

2          MR. MAGNER:  Under 3148, which is the section that

3     deals with sanctions for violation of a release condition, if

4     the Court would look at it's like the third full section, "If

5     there's probable cause to believe that while on release the

6     person committed a federal, state, or local felony, a rebuttal

7     presumption arises," --

8          THE COURT:  True.

9          MR. MAGNER:  -- "that no condition or combination of

10    conditions will assure that person will not pose a danger to

11    the safety of any other person or the community."  So that is

12    what the Government would submit is the basis for our claim

13    that there's a rebuttal presumption that this Defendant is

14    dangerous and that he then has the duty to rebut that.

15         THE COURT:  Yeah, but you're got to prove that.

16         MR. MAGNER:  Correct.  And if --

17         THE COURT:  You've got to prove that he's danger.

18    There are allegations that certain things have taken place.

19    And then of course he has to overcome that presumption, I agree

20    if that is proven.

21         MR. MAGNER:  And we're more than comfortable proving

22    that.  We can do it tomorrow or the next day.

23         MR. REED:  Indictments may establish probable cause,

24    but a state court affidavit does not, Your Honor.  It's for the

25    Court to --

1          THE COURT:  That's what I'm saying, there's no formal

2    charge right now.  You have a -- well that all depends, it all

3    depends.  Certain things would be -- a lesser charge can be

4    presented by a complaint, but I don't know about an affidavit.

5    Misdemeanors can be tried on a complaint in Federal Court.  It

6    depends on the type that you have.

7          MR. MAGNER:  He's charged with state felonies.

8          MR. REED:  No, he's been arrested for --

9          THE COURT:  He's been arrested.

10          MR. REED:  -- has not been charged.

11          THE COURT:  There's no doubt about it.

12          The only thing that I'm trying to say, gentlemen, I

13    do believe that -- that's my belief that you all probably could

14    proceed on a revocation hearing today, but as I see it right

15    now -- and I'm trying to get a clear reading.  I understand

16    what 3141 is saying.  I'm trying to get a clear reading of why

17    would this be here, and I don't see any notes on this yet,

18    "Temporary detention to permit revocation of conditional

19    release."  And then it's in the same thing with deportation --

20          MR. LAMY:  Your Honor --

21          THE COURT:  -- yes, and exclusion.  That seems to me

22    that that's geared toward INS or immigration type things.

23    That's what I'm looking at.  I'm trying to look at something to

24    the contrary.

25          MR. LAMY:  Our office has always interpreted that

1    statute to mean for defendants who are currently on supervised

2    release out of some jurisdiction when they get arrested on new

3    federal charges, that this is a statute that allows for their

4    revocation in that court before being brought before a court

5    here for a detention hearing.

6              THE COURT:  That's the way it looks to me.

7              MR. LAMY:  So, like somebody who would be on

8    probation and then the new charges might constitute a violation

9    to allow for him to be revoked in the other jurisdiction still

10   being in federal custody under temporary detention remaining in

11   custody within our -- so that was our -- has been always our

12   understanding of that temporary detention statute.

13             MR. MAGNER:  And I just remind the Court that this

14   all falls under 3142 which is the release of the detention of a

15   defendant --

16             THE COURT:  Sure it does.

17             MR. MAGNER:  -- pending trial.  So, this is clearly

18   under its very terms --

19             THE COURT:  But there is a --

20             MR. MAGNER:  -- applied to somebody --

21             THE COURT:  -- specific provision of (f) for a

22   detention hearing.  You see whenever you have a specific

23   provision that states something, you go to that specific

24   provision, and that's the one that deals with what I'm to do in

25   a detention hearing.

1              MR. MAGNER:  Right.

2              THE COURT:  And you're saying this other statute

3 provides for temporary detention to permit revocation of a

4 conditional release.

5              MR. MAGNER:  Which is what the Defendant is on now.

6              THE COURT:  No, he's on a bond --

7              MR. MAGNER:  A conditional --

8              THE COURT:  -- with certain special conditions is

9 what he's under.

10             MR. MAGNER:  Correct, all under 3142, he's been

11 released under conditions.

12             THE COURT:  He was released under the conditions

13 under 31 --

14             MR. MAGNER:  And that condition is that he not

15 violate any state, local, or federal law.

16             THE COURT:  That is correct in that portion of it,

17 but there's another portion of 31 that talks about factors to

18 be considered and that's what I looked at when he was

19 originally released.

20             MR. MAGNER:  Correct.

21             THE COURT:  The question is what do you do at this

22 point?

23             MR. MAGNER:  With all respect, I think what the Court

24 does is it sets a hearing where it considers all the evidence

25 instead of us trying to do this on the fly.  We need to be able

1    to --

2            THE COURT:  Well, he's been brought in here and I'm

3    going to look at it on the law not on the fly, because that's a

4    serious thing when you're talking about putting any citizen in

5    jail.  To me it's always serious whether it's one day, one

6    hour, or whatever the time is, it's always serious.  And I'm

7    looking at it in that direction and in that way and looking at

8    it in accordance with what the law is.  I'm you just read it

9    one way and the other people read it another way and I'm trying

10   to see what is actually here.

11           MR. REED:  We don't dispute the Government's right to

12   have a hearing, Your Honor.

13           THE COURT:  Oh, I know you don't.

14           MR. REED:  We don't dispute the Government's right to

15   amend the conditions.  What we dispute is their right

16   unilaterally coming in here today to hold the Defendant in

17   custody pending that whether it be 24 hours or 48 hours --

18           MR. MAGNER:  And, Your Honor, this isn't something --

19           MR. REED:  -- without Your Honor finding a present

20   danger today.

21           MR. MAGNER:  This isn't something that Mike Magner

22   has come up with.  Congress did in the Bail Reform Act.  It

23   provides that --

24           THE COURT:  Well, I have to see how it's been

25   interpreted and I don't see anything in here.  Right now I have

1   to do some research and see how it's been interpreted.   Nobody

2   is ready for that, except we're just looking at the Black

3   Letter law right now.   We have to see how it's been

4   interpreted.

5           And I heard from Pretrial Services in that regard as

6   to how they've been interpreting it, but I have to see how the

7   courts have been interpreting this, because it seems like to me

8   most of this stuff when I get through reading the rest of this

9   it just seems like it has to do as Mr. Lamy has pointed out, as

10  well as it deals with immigration and naturalization matters as

11  well.   It talks about deportation and exclusion proceedings.

12  "Temporary detention is sought under 1(b) of this section," --

13  "such person as the burden of proving to the court that such

14  persons," -- "United States citizens or lawful admission for

15  permanent residence."   This whole thing seems to be geared

16  toward that.   It's under two.   "Temporary detention to

17  permit" --

18          MR. MAGNER:   And Mr. Kennedy just pointed out to me

19  that 3148, which is clearly what we are under here, refers the

20  Court back to 3142 in that very first paragraph.   So, that's

21  why we're back in the same procedural posture that we would be

22  ordinarily in a routine arrest where --

23          THE COURT:   They say he's subject to a revocation of

24  release, that's what we're talking about, an order of detention

25  and a prosecution for contempt of court.   That's what it said.

1              MR. MAGNER:  Right, and the Pretrial Officer --

2              THE COURT:  Those are the sanctions.  Those are the

3    sanctions that can be administered.

4              MR. MAGNER:  Right.  And that's why the Pretrial

5    Officer has sought a revocation of release.

6              THE COURT:  All right.  Let's go down, since you're

7    going that far, (b) says, "Revocation of release:  The attorney

8    for the Government may initiate a proceeding for revocation of

9    an order of release by filing a motion with the District

10   Court."  Here the Pretrial Services Officer has filed.

11             MR. MAGNER:  Yes.

12             THE COURT:  "A judicial officer may issue a warrant

13   for arrest" --

14             That wasn't necessary because he came in.  I did sign

15   that order to arrest him and he came in on his own.

16             -- "of a person charged with violating a condition of

17   release, and the person shall be brought before a judicial

18   officer in the district in which such person's arrest was

19   ordered for a proceeding in accordance with this section.  To

20   the extent practical a person charged with violating the

21   condition of release that such person not commit a federal,

22   state, or local crime during the period of release shall be

23   brought before the judicial officer who ordered the release and

24   whose order is alleged to have been violated.  The judicial

25   officer shall enter an order of revocation and detention if

1    after a hearing the judicial officer finds that there is," and

2    these are the things that are broken down, "finds that there is

3    (1)(a) probable cause to believe that the person has committed

4    a federal, state, or local crime while on release, or (b) clear

5    and convincing evidence that the person has violated any other

6    condition of release, and (2) finds that," -- and that's an

7    "and" "based on the facts as set forth in Section 3142(g) of

8    this Title there is no condition or combination of conditions

9    of release that will assure that the person will not flee or

10    pose a danger to the safety of any other person or community,

11    or (b) the person is likely to abide by any condition or

12    combination of conditions of release."  And it goes on.  Well,

13    we've read that already about probable cause.

14        MR. MAGNER:  Right, because there's a rebuttable

15    presumption.

16        THE COURT:  That brings us back full circle.

17        MR. MAGNER:  Well, but if we could continue on there,

18    Judge, it says, "If there is probable cause to believe that

19    while on release the person committed in this case a state or

20    local felony a rebuttable presumption arises that no condition

21    or combination of conditions will assure the person will not

22    pose a danger to the safety of any other person or the

23    community."

24        THE COURT:  And I highlighted that, it's in yellow.

25        MR. MAGNER:  And a judicial officer has found that

1    there was probable cause to arrest Mr. Shepherd and to search

2    his home.  And in that home in the papers that you have the

3    woman's cell phone that she claimed that Mr. Shepherd stole was

4    found.

5              THE COURT:  Now, this is what I'm going to do.  I'm

6    going to order that the hearing take place today.  If you all

7    want to do something different, that's fine.  I think it can

8    be.  You have enough information to bring this man here.

9              MR. MAGNER:  Judge, how do I get the victims

10   subpoenaed?

11             THE COURT:  You know a detention hearing or a

12   revocation is not a trial.  I've read so many cases from the

13   Fifth Circuit that discourage that and I try to tell lawyers

14   that all the time.  These are not trials, these are hearings.

15   You shouldn't have all this.  You can't go beyond a reasonable

16   doubt.  That's not the test.

17             MR. MAGNER:  May we have an hour to prepare,

18   Your Honor?

19             THE COURT:  You certainly can.

20             MR. MAGNER:  Thank you.

21             THE COURT:  I don't see a problem with that.  I'll be

22   here and whomever else has to be.  I just can't see it.  That's

23   not due process.  You have to have due process.

24             Yes, sir?

25             MR. ROBY:  Your Honor, if I could, Mr. Shepherd is

1    here.  While we're waiting could I respectfully ask that he be

2    -- have the handcuffs taken off of him?  He's obviously, Judge,

3    not going to flee and I think that there is no good reason at

4    this point to have him stand before this Court handcuffed.  And

5    that way he can at least sit at the table while we wait for

6    this next hour.

7            MR. MAGNER:  Judge, there is a good reason.  You

8    know, he needs to be treated like any other defendant --

9            THE COURT:  Mr. Magner, I'm going to order that the

10   handcuffs be placed in the front.

11           MR. MAGNER:  Thank you.  No objection.

12           THE COURT:  Not on the back, so he can at least go

13   through the papers --

14           MR. ROBY:  Thank you, Judge.

15           THE COURT:  -- that he can.

16           MR. ROBY:  Thank you.

17           THE COURT:  All right, we can do that.

18           So, we're going to recess for an hour.  I don't see

19   any reason why we can't go forward within an hour.

20           MR. MAGNER:  Well, the Government is prejudiced,

21   Your Honor.  I can't find this woman.  Everything I've heard is

22   that she wanted to move forward, that she felt that she was in

23   danger, that she felt that she was at risk, and I'm relying on

24   what --

25           THE COURT:  I tell you what then, if you just insist

1  on it I'm going to place him in a halfway house tonight.

2  That's as far as I'm going to go.  I'm not going to put him in

3  jail for a temporary -- that's the best I can do, or either

4  house arrest, one of the two.

5          MR. REED:  Your Honor, I have --

6          MR. MAGNER:  If he's in a halfway house I would ask

7  that we have until Wednesday to track down our witnesses.

8          THE COURT:  I'm not going to do it that long because

9  I don't think it's necessary.  I don't think it's -- to me

10  that's not in good faith.

11          MR. REED:  Your Honor, we would be perfectly

12  agreeable to house arrest for 24 hours without any problem at

13  all and --

14          THE COURT:  No, I'm going halfway house.

15          MR. REED:  -- I'm sure there are ways of monitoring

16  that --

17          THE COURT:  I'm going with a halfway house, my first

18  inclination.  I'm going with a halfway house.  That's what I'm

19  going to do.  I'm going to go with that.  And I think that

20  would be an accommodation better than anything else at this

21  point until we can have a hearing.

22          Now, if you all can be ready tomorrow -- I don't see

23  any reason why you all can't, to tell you the truth, tomorrow

24  afternoon.

25          MR. MAGNER:  Well, because every indication I have

1    received is that this woman does not want to be found at this

2    point, but I'll do my very best to get her here.

3           THE COURT:  You can get right on the internet and

4    find out where she is probably.

5           MR. MAGNER:  I know where she lives, Judge, she

6    doesn't want --

7           THE COURT:  I'm not talking about live, I'm talking

8    about you can probably find out where she works.  If she listed

9    in there you probably can find her.  You've got investigators,

10   they can find her if she's a citizen.  With the stuff I've been

11   reading in here Jefferson Parish knows if they've already

12   interviewed her, you know.  So, what I'm going to do is --

13          MR. ROBY:  Well, Judge, --

14          THE COURT:  Yes?

15          MR. ROBY:  I guess in light of the Government's

16   comments that they have reason to suspect that she doesn't want

17   to be found, what are we really talking about here is we're

18   talking about setting this for a real date to address these

19   matters.  But if the Government stands here today and they've

20   of the opinion that they're not sure how to find her or if she

21   does not want to avail herself of these proceedings, how

22   genuine must we take the Government's position that they're

23   ready to go forward to resolve this either today, tomorrow, or

24   Wednesday if she doesn't want to be found?

25          THE COURT:  Well, I'm telling you all this:  I'm

1   trying to do this in accordance with the spirit of the law, the

2   letter of the law, and I think I'm within what I can do right

3   now, and I think that's a reasonable time.  We're not talking

4   about proof beyond a reasonable doubt.  We're talking about a

5   different set of proof.  We're talking about -- and even

6   hearsay is admissible at these hearings for detention.  We'll

7   see.

8           I think tomorrow at three o'clock will give everybody

9   enough time, because I have my regular docket at three o'clock.

10          We don't have anything?  Well, there'll be some walk-

11  ins probably.  I want to give them enough time.  If I say two

12  o'clock, that may not be enough time.

13          Three o'clock tomorrow I'm going to -- and require

14  this gentleman to be -- I'm adding the condition at this point

15  that he stay at a halfway house and that he be here tomorrow.

16  He's going to have to spend it over there.

17          Can that be arranged, officers?

18          MR. LAMY:  Yes, Your Honor.  Our office has actually

19  already contacted the halfway house to see if they would have

20  room.

21          THE COURT:  Y'all thinking ahead of me.

22          MR. LAMY:  Yes, Your Honor.

23          THE COURT:  And I hadn't even thought about that

24  until I got up here and I started thinking.

25          Well, we need to have Mr. Shepherd over there and

 1    he's to be back here for three o'clock tomorrow.

 2            MR. LAMY:  The order should stipulate 24-hour

 3    confinement to the halfway house.

 4            THE COURT:  Oh, yeah, 24-hour confinement to the

 5    halfway house.  And the other conditions still remain in

 6    effect, Mr. Shepherd.  That's the best we can do right now is

 7    terms of being in compliance with the law.

 8            I have to give each side an opportunity to try to --

 9    in the meantime I'm going to go do some research myself, and

10    try to find out how other courts have interpreted this

11    particular section and see, because, you know, I don't have

12    this -- I don't have the notes and stuff in this book.  I have

13    to go and see.  And I encourage the lawyers to do the same

14    thing, because it may be it turned out the Government's

15    position may prevail or the Defense's position may prevail.

16    You may have -- for another time.  I don't know, I'm leaving it

17    open, I'm going to look.  That's the best thing I can do and

18    for you all to do to see if you can find something.  As a

19    matter of fact you're officers of the court, you ought to try

20    to find out something to support your various positions.  And I

21    welcome whatever research you all find, because I'm going to

22    look too.

23            MR. REED:  Yes, sir.

24            MR. MAGNER:  Thank you, Your Honor.

25            THE COURT:  All right, so Mr. Shepherd you're going

34

1    to be released with the condition that you shall be confined at

2    a halfway house and be in compliance with all of the other

3    pretrial release conditions.  Will you do that?

4              DEFENDANT SHEPHERD:  Yes, sir.

5              THE COURT:  All right.  Now, we're going to convene

6    tomorrow at three, Mr. Reed, and all other counselors.

7              MR. REED:  Yes, Your Honor.

8              MR. MAGNER:  Thank you, Your Honor.

9              THE COURT:  All right, thank you very much.

10                         *    *    *    *    *

11                         (Hearing Concluded)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

__S/Dorothy M. Bourgeois__                                        __8/1/08__
 DOROTHY M. BOURGEOIS                                          DATE