

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   OCT 1 0 2008

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 07-384 |
| v. | * | SECTION: "J" (1) |
| DERRICK D.T. SHEPHERD | * | VIOLATIONS: 18 USC § 1956(h) |
| | * | |

\* \* \*

## FACTUAL BASIS

If this case were to proceed to trial, the Government would prove that **DERRICK D.T. SHEPHERD** (hereafter "**SHEPHERD**") conspired with **GWENDOLYN JOSEPH MOYO, a/k/a Gwen Moyo** (hereafter referred to as "**MOYO**") and **AA COMMUNICATIONS, INC.** (hereafter "**AA COMMUNICATIONS**") to launder money generated by specified unlawful activities, namely mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1956(h). The government would prove this beyond a reasonable doubt through the introduction of admissible evidence and the testimony of competent witnesses to prove the following facts:

**MOYO** was an individual residing and doing business in Louisiana. **MOYO** was neither licensed nor authorized to transact insurance in Louisiana nor any other state.

\_\_\_Fee_____
\_\_\_Process\_\_\_\_\_
X \_/Dktd_____
\_\_/CtRmDep\_\_\_\_\_
Doc.No._____

MOYO, at times, held herself out as a "local agent," "risk manager," "underwriter," and "attorney-in-fact" for unlicensed, unauthorized insurers.

AA COMMUNICATIONS was a corporation incorporated in Nevada, with its principal place of business in New Orleans, Louisiana. AA COMMUNICATIONS was neither licensed nor authorized to transact insurance in Louisiana nor any other state, but did so under the direction of MOYO.

SHEPHERD was an attorney and Louisiana State Senator. SHEPHERD knowingly deposited construction bond premiums in his accounts for MOYO and AA COMMUNICATIONS after MOYO and AA COMMUNICATIONS were ordered to cease and desist from engaging in the business of insurance and their bank accounts had been seized by state regulators. SHEPHERD returned a portion of the construction bond premiums to MOYO and issued checks to third parties at her direction.

First Nations Insurance Group (hereafter referred to as "First Nations") was an alien insurer purportedly doing business in Toronto, Canada. It was neither licensed nor authorized to transact insurance in any state.

United Assurance Company Limited (hereafter referred to as "UACL") was an alien insurer purportedly doing business in Monserrat; Grenada, West Indies; and Los Angeles, California. It was neither licensed nor authorized to transact insurance in any state.

Under Louisiana law, insurance is defined by statute as including construction payment and performance bonds and is regulated by the Louisiana Department of Insurance.

**MOYO** and **AA COMMUNICATIONS,** and others known and unknown, joined in a scheme to defraud and obtain money by fraudulently selling bogus construction payment, performance, and bid bonds purportedly insured by First Nations, UACL, and other unlicensed, unauthorized individuals and entities. In perpetrating the scheme, **MOYO** and **AA COMMUNICATIONS** utilized the U.S. mails and common carriers as well as interstate wires to materially further the fraud scheme. Among other things, the scheme involved the fact that **MOYO** failed to reveal that she was barred from engaging in the business of insurance due to her prior convictions for crimes involving dishonesty and a breach of trust and that **AA COMMUNICATIONS** functioned as **MOYO's** alter ego and shielded **MOYO's** income from seizure by creditors and other third parties. **MOYO** and **AA COMMUNICATIONS** also failed to reveal that they were not authorized to engage in or transact insurance in Louisiana or elsewhere.

Most significantly, **MOYO** and **AA COMMUNICATIONS** failed to reveal that on November 17, 2006, **MOYO, AA COMMUNICATIONS**, and UACL and certain of their officers and employees were ordered by the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, to cease and desist from engaging in the business of insurance. This Cease and Desist Order stemmed from a complaint by Great Southern Dredging, Inc., that **MOYO, AA COMMUNICATIONS**, and UACL had solicited and accepted premiums for payment and performance bonds relative to a construction project which were not in compliance with Louisiana law and then failed to return the premiums after the bonds were rejected.

Instead of complying with the Cease and Desist Order, **MOYO** and **AA COMMUNICATIONS** continued to engage in the business of insurance. From late November, 2006 through December 22, 2006, **SHEPHERD** laundered **MOYO's** and **AA COMMUNICATIONS'** criminal proceeds through **SHEPHERD's** law firm's bank accounts, enabling MOYO to realize these proceeds. **SHEPHERD** was fully aware of the Cease and Desist Order and accepted construction bond premium checks from **MOYO** and **AA COMMUNICATIONS** after the entry of the Cease and Desist order. **SHEPHERD** kept a portion for himself, and distributed the remainder back to **MOYO** and to third parties at **MOYO's** direction.

To conceal his role in the scheme, **SHEPHERD** created false bills and time records to disguise his actual role in the money laundering scheme. When questioned by the FBI, **MOYO** stated that **SHEPHERD** did not do anything for her in return for the money he derived from his dealings with her.

To effectuate the money laundering scheme, **MOYO, AA COMMUNICATIONS,** and **SHEPHERD** engaged in a number of financial transactions at Dryades Savings Bank affecting interstate commerce which involved the proceeds of the mail and wire fraud scheme and to promote the fraud. **MOYO, AA COMMUNICATIONS,** and **SHEPHERD** did this knowing that the money represented the proceeds of some form of unlawful activity.

The conspirators performed a number of overt acts in furtherance of the conspiracy. Specifically, **SHEPHERD** caused checks related to bond premiums and made payable to **AA COMMUNICATIONS** to be deposited in his trust account at Dryades, from VDI Drywall, Sun-Tech Plumbing, MPC Plumbing, and another account of Moyo's at Pershing/AXA Advisors totaling $140,686.21. One of those checks, in the amount of $27,440, was subsequently returned for insufficient funds.

**SHEPHERD** then caused checks to be written to **MOYO**, using her maiden name, Gwendolyn Joseph, in the amount of $75,000, as well as checks to a number of her criminal associates. Among those checks was a check payable to Yu Peng, an employee of **MOYO's**, who cashed one of the checks at the direction of **MOYO** and immediately turned over the proceeds to **MOYO**.

**SHEPHERD** deposited checks totaling $55,000 from his trust account at Dryades into his operating account at Dryades; in the memo section of each check is written "AA Communications." **MOYO** sent **SHEPHERD** a check to replace the funds lost due to the NSF check, and **SHEPHERD** realized approximately $45,000 from the laundering scheme.

**SHEPHERD** deposited a $15,000 check from his law firm operating account at Dryades into his personal account at Capital One.

**SHEPHERD** also deposited an $8,000 check from his operating account at Dryades into his trust account at Dryades.

SHEPHERD also wrote a check in the amount of $20,000 for his campaign expenses from his operating account at Dryades Savings Bank; in the memo section of the check is written "AA Communications."

| Signature | Date |
|---|---|
| MICHAEL W. MAGNER<br>Assistant United States Attorney | 10/10/08 |
| GREGORY M. KENNEDY<br>Assistant United States Attorney | 10-10-08 |
| DANIEL P. FRIEL<br>Assistant United States Attorney | 10-10-08 |
| DERRICK D.T. SHEPHERD.<br>Defendant | 10-9-08 |
| JOHN WILSON REED, ESQ.<br>Counsel for Defendant | 10/9/08 |